Saracena et al. *v.* Ninneman et ux., Appellants.

Argued November 10, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

A. J. White Hutton, with him Addison M. Bowman, Jr., and E. M. Biddle, Jr., for appellants.

W. E. Shissler, for appellees.

OPINION BY MR. JUSTICE PATTERSON, January 3, 1949:

Dominic Saracena and George Steenland, partners, doing business as Saracena and Steenland, appellees, instituted this action in assumpsit against N. P. Ninneman and Naomi S. Ninneman, trading as N. P. Ninneman, Developer and Builder, appellants, to recover $4,619.83, the balance due for construction of six houses. Appellants denied that any balance was due and owing. The case was tried by a judge without a jury who found in favor of appellees for the amount claimed with interest thereon from October 31, 1941. Appellants' exceptions to the decision of the hearing judge were dismissed by the court en banc and judgment entered in favor of appellees. This appeal followed.

Appellees, on November 14, 1939, contracted in writing with C. & D. Development Company (hereinafter known as C. & D.) to construct forty-one houses at a basic price of $188,440. Appellees furnished "extras" to said contract totaling $384.91 and performed miscellaneous outside development work in a total amount of $2,317.26,—a total additional amount of $2,702.17. On account of this contract C. & D. paid appellees $190,884.92, and items of expense chargeable to appellees in amount of $6,110, and telephone charges in amount of $5.90. The total expended by appellants was, therefore, $197,000.82. This represented an overpayment to appellees up to and including April 16, 1941, of $5,858.65.

Appellees and C. & D., on November 6, 1940, entered into a second written contract for construction of six houses, the basic contract prices for which totaled $29,320. Appellees supplied extras in amount of $152. There was, therefore, due under the second contract $29,472. C. & D. had paid to appellees by check the total amount of $22,352.17, leaving a balance due appellees on April 16, 1941, of $7,119.83.

Appellants negotiated for and purchased the business of C. & D. On April 16, 1941, they entered into a written agreement with appellees whereby the latter agreed to complete for appellants the contract of November 6, 1940, which it had with C. & D. The agreement modified certain terms of the original agreement not material here. There was executed at the same time a "Supplemental Agreement". Under Part One thereof, appellees undertook, in consideration of appellants discharging them from any and all liability for overpayments by C. & D. to complete the original undertaking of November 14, 1939, at an estimated total cost of $1,058. Appellees discharged C. & D. from any and all liability "for any cause or thing whatsoever." Part Two thereof recognized that an indebtedness existed from C. & D. to appellees for amounts due under the November 6, 1940, contract for the six houses, and appellants assumed the indebtedness and agreed to pay to appellees all sums due appellees under the latter contract. Appellees also undertook to construct four additional houses. The contract price per unfinished house was reduced from $4,650 to $4,550.

Subsequent to April 16, 1941, appellants paid to appellees $2,500 on account of contract for construction of the six houses. This payment reduced the balance due appellees to $4,619.83, the amount for which this suit was brought and which the court below found due and owing, with interest thereon from October 31, 1941.

Appellants' principal contention is that the trial judge erroneously admitted into evidence appellees' exhibits 6, 8, and 9. As representative of C. & D. from November 14, 1939 to January 13, 1941, all bills for materials purchased by appellees and all work done by appellees passed through and were approved by one W. A. Riddle, office manager for C. & D. and appellants from 1939 to 1944. Appellees, upon receiving bills from suppliers of materials, segregated them according to jobs and turned them, together with their own bills, over to Riddle. The bills were taken to the Chambersburg office of C. & D. and checked for "accuracy" by the bookkeeper, W. E. Dando. Thereafter, checks were issued by C. & D. to appellees who in turn allocated the sum so paid to the respective contract jobs. C. & D. required that after the bills were paid appellees return the receipted bills to it. These receipted bills were retained by C. & D. Upon transfer of the business to appellants these receipted bills became the latter's property and at the time of trial were in their possession.

Frederick Bahrenburg was employed by appellees January 13, 1941, and immediately set up books of account. Riddle had prepared a statement (appellees' Exhibit 8) of extra miscellaneous outside development work not covered by any written contract and submitted the same to Bahrenburg, together with the folders containing the weekly bills and statements submitted by appellees. Bahrenburg audited Riddle's statements and found certain items omitted therefrom. He prepared an amended statement (appellees' Exhibit 6) and gave a copy to Riddle. At the same time, from the folders and statements furnished by Riddle, he prepared a statement (appellees' Exhibit 9) of the overpayments made by C. & D. to appellees on the November 14, 1939, contract. This statement revealed the exact overpayment to have been $5,858.65. During negotiations between C. & D. and appellants for purchase of the C. & D. business, appellees supplied them with all of the above

statements. This data was, therefore, in the minds of the parties when they entered into their written agreement of April 16, 1941.

All of the challenged exhibits were shown to have been prepared from data supplied by appellants' predecessors in interest, which data was in appellants' possession at the time of trial. There is not a scintilla of evidence that the parties did not enter into the April 16, 1941 agreement equally cognizant of all facts and circumstances. The evidence is to the contrary. The exhibits were not, in any way, misleading. The original papers from which the statements were prepared were shown to be in appellants' possession. If error existed as regards any item they had all the evidence available to prove the true fact. No attempt was made to challenge the correctness of figures by introducing an original receipt different in amount. Under the circumstances of this case the admission in evidence of appellees' exhibits 6, 8, and 9 was not error. Nor did the court err in using the figures therein set forth to reach its decision.

Appellants' contention that there was no evidence to show from what original entries the exhibits were prepared, or that it was correct, or why the originals were not produced is without merit. The evidence supports the findings of fact, and they, being approved by the court *en banc*, will not now be disturbed.

Judgment affirmed.